FILED

12/08/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0231

DA 20-0231

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 308N

IN RE THE MARRIAGE OF:

MEGHAN FENOGLIO,

      Petitioner and Appellee,

  and

WILLIAM FENOGLIO,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
                  In and For the County of Park, Cause No. DR-2019-26
                  Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            William Fenoglio, Self-Represented, Livingston, Montana

        For Appellee:

            Jami Rebsom, Jami Rebsom Law Firm P.L.L.C., Livingston, Montana

                          Submitted on Briefs:  November 12, 2020

                                  Decided:  December 8, 2020

Filed:

_____
                        Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 William Fenoglio appeals the Sixth Judicial District Court's final parenting plan for his three minor children. The plan calls for the children to reside primarily with their mother, Meghan Fenoglio, and to spend every other weekend and holiday with William, as well as a two-hour block of time each Tuesday evening and a two-week summer vacation period. William also will have an additional week with the children to facilitate a visit to their paternal grandparents in Texas. Appearing on his own behalf in this appeal, William argues that the court's parenting plan is contrary to its acknowledged finding that both parents are very involved and bonded with the children; that it disregarded the best interests of the children and William's constitutional rights as their natural father; and that it improperly credited Meghan's testimony and anecdotal evidence when it based its decision on William's alleged alcohol and drug use. William also argues that the District Court improperly adopted and then relied on its interim parenting plan, which it entered without considering his affidavit or allowing a hearing. William maintains that the children desire to have equal time with both parents, that he refuted with evidence Meghan's allegations of his purported chemical dependency issues, and that the District Court improperly

2

ignored his equal primary and consistent care of the children and his ability to continue to do so.  As such, William contends that the court misapplied the law governing evidentiary considerations and the standards for determining an appropriate parenting plan and abused its discretion in severely limiting his parenting time.

¶3      Meghan, through counsel, responds that the final parenting plan is in the children's best interest and was based on credible evidence and testimony.  Meghan points out that it is not this Court's function to reweigh conflicting evidence or to substitute its judgment regarding the strength of the evidence for that of the District Court.  She contends that the District Court did consider William's affidavit when entering the interim parenting plan, mistakenly calling the affidavit a "response."  More, the court set a hearing on the final plan less than two months later, at which it heard extensively from both parties.

¶4      "A district court has broad discretion when considering the parenting of a child, and we must presume the court carefully considered the evidence and made the correct decision."  *Northcutt v. McLaughlin (In re G.M.N.)*, 2019 MT 18, ¶ 11, 394 Mont. 112, 433 P.3d 715 (citation omitted).  We review a district court's findings of fact in a dissolution proceeding to determine if they are clearly erroneous.  *Crowley v. Crowley*, 2014 MT 42, ¶ 24, 374 Mont. 48, 318 P.3d 1031 (citing *Bock v. Smith*, 2005 MT 40, ¶ 14, 326 Mont. 123, 107 P.3d 488).  This Court does not reweigh conflicting evidence or substitute its judgment for that of the district court; we instead evaluate findings of fact to determine "whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented."

3

*In re G.M.N.*, ¶ 11 (citations omitted). Absent clear error, we review a district court's decision regarding a parenting plan for an abuse of discretion. *In re G.M.N.*, ¶ 11.

¶5      The parties' children were thirteen, eight, and seven years of age at the time the District Court considered the final parenting plan. The court held a full day hearing on the parenting plan, at which both parties were present and represented by counsel. The court received evidence and testimony from numerous witnesses, including both parents, and posed its own questions to the witnesses. The court did, as William points out and as is well-supported in the record, find both parents to be very involved and bonded with the children. But it found highly credible Meghan's testimony about William's alcohol and drug use. After hearing conflicting testimony on the issue, the court found that William had not acknowledged the problem and, "[a]s an integral part of the [District] Court's final Parenting Plan," required him to refrain from the use of alcohol or illegal drugs while the children were with him. It noted that William started AA after Meghan said she was filing for dissolution and even took the children with him to a session, telling them it was about him getting "healthy." But then he stopped and had his own chemical dependency evaluation done, in which he minimized his alcohol use and told the evaluator he didn't have a problem. The District Court also found unpersuasive William's handful of self-scheduled drug tests, which all were negative, and it did not find William's testimony to be credible. Finally, the court found that William had engaged in conduct contrary to co-parenting, such as not giving Meghan parenting time when he could not exercise his time—but leaving the children with a sitter instead—putting too much responsibility on the 13-

4

year-old, and enrolling the youngest child in a summer program without consulting or even advising Meghan.

¶6 "[A] district court must 'determine the parenting plan in accordance with the best interest of the child'[and must] consider 'all relevant parenting factors' in making these determinations." *Tubaugh v. Jackson (In re C.J.)*, 2016 MT 93, ¶ 14, 383 Mont. 197, 369 P.3d 1028 (quoting § 40-4-212(1), MCA). After weighing the conflicting evidence, the District Court in this case entered findings on each of the statutory best interest criteria and, based on those findings, concluded that the children should reside primarily with Meghan. Upon review of the record, we do not find clear error in the court's resolution of the conflicting evidence and conclude that it properly applied the law to the facts it found.

¶7 We find it unnecessary to further consider William's arguments about the interim parenting plan. The District Court issued a temporary parenting order at the end of October on the basis of the parties' written submissions and set a hearing for six weeks later. The court plainly entered its final parenting plan on the basis of evidence presented in open court on the hearing for that purpose, and it gave full and thoughtful consideration to both parties' testimony.

¶8 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's final decree of dissolution and final parenting plan are affirmed.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON
/S/ JIM RICE